Mr. Donahoe. Thank you, Your Honor. I would, if the Court please reserve two minutes. I think you've got eight on the clock, so you're in business. Thank you. My name is Michael Donahoe. I'm from the Federal Defender's Office in Montana. I work and live in Helena. This is a Helena Division case that was tried to the district court in the context of a bench trial wherein two motions were brought prior to that trial. We bring three claims to the Court for consideration today, two of which I don't intend to discuss. They would be the first two. And I intend to spend the lion's share of my time here on the sufficiency question. This is an unusual case, Your Honors, I guess in the annals of child pornography cases, in that it's not the typical setup here where the FBI did their investigation either through the lime wire or through informant basis, got search warrants, got consent, went in, seized the hard drive, archived it, looked at what the images were, determined who the users were, and so on. In those typical types of cases we have a wealth of evidence in terms of download dates, user data that in the vast majority of cases establishes beyond a reasonable doubt that the individual in question is guilty. This case is not of that ilk. And it's distinguished because it arises first in a very unusual context. The caregiver context, man that's disabled with MS, and Mr. Heller here is assigned or comes on to be his caretaker. Is he borderline mentally disabled as well? Your Honor, there was some discussion of that, and I don't remember. You had an IQ of 70. Yeah, at the suppression hearing or at the trial itself. Reading the transcripts and reading his testimony, it was a little difficult to glean precisely what his limitations were from a full record. Right. I'll go ahead and make a concession and say he's mentally disabled to the extent that he makes poor decisions in terms of taking care of himself day to day. But I would add to that quickly the distinguishing factor that this individual had very sophisticated computer skills, and I think that they were beyond his mental incapacities. They exceeded his mental incapacities. And was there evidence that the, I'm sorry, what was the name of the fellow who was being cared for? Well, we refer to him as J.W. J.W., okay. Was there evidence that J.W. had previously downloaded kiddie pornography? There was, Your Honor. Before he came in contact with Mr. Heller? There's clearly that evidence in this record. And you could read Agent Ashley's testimony. And was he doing that in connection with somebody else, or was he doing that on his own initiative? That was on his own initiative. Doing it by himself? He was, Your Honor. Was he storing it on disks? Yes, he was, Your Honor. Okay. Was he marking those disks? That I do not know. I cannot answer that question. We had a number of distinctly marked disks in this case. We did. Some of which had Mr. Heller's name on them. They did. There were at least two, I think, in my memory that had the name Glenn on them, G-L-E-N-N. Yes. And there was testimony by J.W. that he, in fact, was looking for things that he knew Glenn would like and that he, in fact, had been directed to look for, and then they would watch these, correct? Right. And I think that's a fair gist of the proof, Your Honor, that their association, some of which was sexual in nature, that came out in the proof as well, and that they would view this material, I guess, in the context of those activities. You see there's a prelude or a during. But I guess the problem I have with that, and I want to stress here, is that we have child pornography activities that antedate that activity by some number of years by this individual. Then we have the discovery of the child pornography. The relationship then is no longer between these two individuals. Mr. Heller is clearly out of the picture. And then we have J.W. back involved again with child pornography at the care home that he is at that point in time. That's discovered. And I guess I want to say real quickly that then that's denied. That's denied. He does not want to take responsibility for that. But surprisingly, the trial says, yes, I mean, that he was involved. And in response to a government counsel question, why were you doing these things? Well, I have a problem. And then there's, as Judge Lovell notes in his findings and conclusions, there's the indication that Mr. or J.W., I'm sorry, was himself abused. So if you connect the dots there, there's certainly motivation, respectfully, to offload responsibility. And was this individual capable of doing that? No. And we respectfully submit that he was. He had the material. He knew Mr. Heller was suspected. The investigation was intensely focused on Mr. Heller. J.W. was treated as a victim for reasons well beyond the ordinary case. Counsel, those arguments seem like the kind of arguments that would be well placed to a jury or a judge, in this case, in a bench trial. But the question here is whether there's sufficient evidence in the record that a judge could have found differently. And it does seem like there is other evidence here, because J.W. has testified that Mr. Heller told him what he wanted, that Mr. Heller told him that even though he had the disks made for him, that he would not take them home because he was afraid his wife would find them. So there's other evidence here, particularly in the case where you have a caregiver, that Mr. Heller knew exactly what was going on and that he was directing J.W. or telling J.W. what he wanted him to do, relying on J.W. to do it for him, taking advantage of him in that way, and taking advantage of him in that he was leaving the porn stowed at J.W.'s house. Well, I guess my response to that would be twofold. The first is that, respectfully, Your Honor, I think we need to keep our eye on the ball here. The judge level made a finding that exclusive of the confession, the proof was sufficient. And I'm sort of arguing here on the strength of that. If the district court was willing to find guilt beyond a reasonable doubt, exclusively based on the technical evidence, irrespective of the confession, we need to take a look at that in isolation. Could Heller testify? At the suppression hearing, he did. At the trial, he did not. So just to narrow it, what is the gap you think exists here that the government can't get over on an inference that has to go favorable to the government? Well, first, I'm sorry, Your Honor. There's clear proof that there was no touching of this computer. There's no proof that this individual, Mr. Heller, had these CDs in his possession at any time. None in this record. And there the ---- Could we stop on that point? Is it a case of because of the nature of the relationship, a constructive possession or at least an inference to the government of a constructive situation? Well, I think so, Your Honor. The subtext of this case generally is, is that it was manipulative. It was oppressive on Mr. Heller's part to take advantage of this individual. And I think it's just hard sometimes, and this is a difficult argument to make, to get beyond the disability. Mr. J.W. displays market tendencies to be completely autonomous in terms of accessing child pornography, manipulating it on his computer, reformatting his computer to get it off the hard drive. That's why we didn't have the actual Internet dates. Let's pretend we don't have Mr. J.W., but we have Mr. W.J., who doesn't have a disability, but does have some kind of a friendly relationship with your client. Wouldn't we be in the same situation? Because if they have some kind of symbiotic relationship in terms of mutual interests and Mr. W.J. is downloading things in effect at the direction or behest of Mr. Heller, wouldn't you end up in the same place on the proof? Well, you may, Your Honor, but I think that's what I'm trying to say. I mean, I think two things happen in these cases. One, of course, sometimes people just go overboard because it says child pornography, you know, and they go, ah. Or in your case, you also have this added difficulty of the disabled gentleman. I'm trying to kind of take those emotional issues out of it and then trying to see, well, what proof do we have and does it match the statute? But I think there, Your Honor, if we use your example, and I think it's a good one, if we use that hypothetical, then we're treating the individual and looking at his or her autonomy and what they're doing as we would we estimate their conduct and behavior and intentions as we would any other person. And I think if you take what happened in this case and apply that conduct, behavior, and intention, J.W.'s, and put it in the body or in the person of an ordinary individual, and I mean that with all due respect, then you're saying, well, hold on here. Is this guy shifting blame? And that's where the reasonable doubt comes in. And there's concrete evidence in the record. You could have dual blame, couldn't you, in effect? I mean, but for his situation, he would probably be a co-defendant. Right. Right. And that's, and Judge Lovell says that in the findings, actually. I mean, I think he makes that finding that they both received and possessed. But in any case, I see I've exceeded my time. I'll leave it there. Okay. He has a little bit of time left, doesn't he? No. Okay. Counsel, welcome back. Thank you. It may please the Court. Curt Almey for the United States. I first would like for the record to correct an error in our brief. On the top of page, I believe it's 13 of our brief, it ends with Howard's results should control here, and that should have been Martin's results control here. Addressing the issues that have been raised by counsel in sufficiency of the evidence, what I understand counsel to be doing here is basically putting forth a second hypothesis and selectively choosing facts that would support that hypothesis. And I would respectfully suggest that this Court has said in United States v. Morris, which is cited in our brief, that for sufficiency of the evidence review, the relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably rely on its verdict. And in this case, Your Honors, I would suggest that there is sufficient proof with or without the defendant's confession to convict when the evidence is taken in the light most favorable to the government. There's basically three types of evidence here. There is evidence from, again, the confession of the defendant, and that's been challenged. There is the forensic and physical evidence. And then the third thing, which is the most difficult for the defendant to get around, is the testimony of J.W. If we look at the testimony of J.W., he says, or the Court finds that he says, that the defendant directed him to download child porn to a computer file. Excuse me. That he directed the defendant to download child pornography to his hard drive. The Court also found that the defendant and J.W. often watched these child porn movies as they were being downloaded to the hard drive. J.W. made the defendant a CD with child porn for him to take home, him being the defendant. But the defendant could not take it home for fear that his wife would find out. When they would watch the movies, the defendant would lock his door while they were viewing it. And the District Court also found that J.W. testified that he frequently downloaded child pornography to CDs, some of which were created for the defendant's use and benefit because they contained the defendant's favorite child pornography movies. I would suggest that we have very strong evidence from J.W.'s confession. Now, to get over that, defense is trying to discredit J.W. First of all, I don't think that defense has shown any inconsistencies. But even if they had shown inconsistencies in his statement, again, you have to take the evidence in the light most favorable to the government. First of all, defense counsel argues that because he had some involvement with his child porn before, that what could have happened is he could have downloaded the porn to CDs long before the defendant became involved, then uploaded it back to a hard drive, and then downloaded it back down to the CDs again when the defendant was involved in his life. Well, first of all, again, that's a different hypothesis. And this Court has said that we don't have to disprove every hypothesis. But even if you take the defendant's statement as true, he still, that doesn't exempt him from either receiving or possessing. He didn't have to download directly from the Internet himself. Now, there's evidence that he did, and the Court found that he did. But he doesn't have to do that. It just had to have originally come down, come from, downloaded off the Internet. Let's suppose that an individual is downloading this kind of material or watching it live stream on a computer, and he invites a friend in. And the friend walks in and looks at the screen and sees what it is and leaves. Has the friend constructively possessed child pornography? Your Honor, I think that's still an open question in this circuit under the Tucker case. And, you know, we would certainly, there's certainly an argument. You're talking about an instance where the friend coming in has no idea about what he's about to see, sees it, is instantly repulsed by it, and leaves. In that situation, I would say that there's neither receipt nor possession by the friend. What if there's a babysitter and has not, in the same way as Judge Hawkins' hypothetical, has not asked for anything, but the kid's a savvy kid and knows that the babysitter likes certain things and downloads it. The babysitter's there exactly while it's being done, maybe in the kitchen. Is that constructive receipt on the part of the babysitter? Your Honor, again, I think the test on the possession is in ROM. I think this Court stated that it's dominion and control can establish possession. And I think we're reaching the point of a jury question. We now have a disparate power relationship. One person has the authority to control the actions of the other. And so by default, by allowing that activity to go on, I think a jury could find that the babysitter was exercising dominion and control over the actions of the person, the child, who they saw acting in front of them. And I think that's a very good analogy here. We have a developmentally disabled adult who has a guardianship established for him, a below-average IQ, cerebral palsy, and he has a caregiver who's coming in and watching, viewing this with him, directing him what to do, directing him to download onto CDs, watching with him, locking the door so that they can watch these activities together. And this isn't just some caregiver. This is a caregiver who is with him frequently and a caregiver who J.W. refers to as Daddy, which I think connotes a whole series of relationships that are not all that different than the power relationship of a babysitter to a child. If we agree with your position, it seems to me that there's a challenge to not, if we were to agree, to not make a holding that's so broad that you really loop people unwittingly into criminal responsibility. How would you write the decision that you're seeking? Your Honor, I think it is sufficient for this Court to uphold the verdict or find the evidence sufficient on the grounds that the defendant directed this individual. Factual findings in this case aren't that he was passive, but that he directed the download of the Internet, download the child porn off the Internet, and they would watch the child porn movies together. And he directed that those movies be saved to CDs, and that's corroborated by two of the CDs having Glenn's files or Glenn's name written on the CDs themselves. So I would suggest that a narrow holding in this case could be limited to the evidence that suggested or that was found to be his direction over the activity as well as his participation in it. Okay. Thank you for coming in today. Appreciate it. Time's expired for both counsel. The case just argued will be submitted for decision, and we'll proceed to the United States v. Mendoza-Rodriguez.
judges: Hawkins, McKeown, Bybee